Good morning, Your Honor. It's Alex Cabado for Appellant Rocio Ryan. Good morning. You may proceed. Thank you. May it please the Court. In 2008, Rocio pled guilty to one count federal program bribery, a felony. At the time that she pled guilty, she was In the briefing at the District Court, both Mr. Brown and Rocio provided affidavits to the Court. Their affidavits obviously differed wildly. Rocio actually alleged that she was told, affirmatively told, by her attorney that she was misled and told that there would be no immigration consequences for pleading guilty because the government was prepared to help her or assist her in immigration proceedings that were to come. And his affidavit, Mr. Brown, indicated that obviously that he said no such thing and that he said that there would be consequences for the guilty plea. When eight years later, actually, we got to court, because this writ of error quorum nobis was filed after she was already sentenced, did time in jail, and initially she started the process of challenging the immigration consequences and then discovered right away that the underlying conviction would have to be addressed before anything could actually be successfully resolved. So it took eight years to get to me where a writ of error quorum nobis was filed. We got to the District Court and the District Court judge denied the writ. The basis for the denial was that essentially that at the plea canvas, the District Court judge indicated that there would be immigration consequences for the guilty plea. Now that's not what happened. Actually, what happened was that the District Court judge asked Mr. Brown if there would be any immigration consequence. The query was to defendant's counsel, and he said, yes, absolutely there would be. By then, though, Ms. Brown indicates that she had already been told by her counsel that there would be no consequences and that the government would actually assist her because of her cooperation and straining out her immigration case. Now what's asserted in the appeal is that what should have happened is that the District Court should have set an evidentiary hearing, and the reason for that is that when there are two writs of error quorum nobis are treated as habeas petitions in the federal courts, and that's pursuant to U.S. v. Taylor, I believe is the case. The District Court held that even if you're right that there was no prejudice because she had made a full, clear, voluntary confession. Well, that's where the ineffective assistance of counsel claim comes in. Well, she made that confession to the FBI before she was charged. Is that right? Right, and so one of the things that Mr. Brown should have and could have done was challenge the confession because... Well, the District Court said that, concluded it would not have been rational to reject the plea agreement in light of the fact that she had confessed. Well, if she had taken her chances at court, perhaps her trial attorney could have challenged that underlying confession. On what basis? Is there anything in the record to indicate what basis she might have had to challenge that voluntary confession? There's nothing in the record, and that's where an evidentiary hearing is all the more pertinent and important, is that the cases indicate that when there is an ineffective assistance of counsel claim, an evidentiary hearing is all the more important where the facts alleged or that may assist the appellant are outside the record. And so at the very least, at the very minimum, at the District Court level, this should have been set for an evidentiary hearing to test the credibility, test the claims of the various parties. Well, the question I have is an evidentiary hearing for what purpose? What could possibly have been discerned by conducting the evidentiary hearing? Well, the first thing that could have been discerned perhaps is the veracity of the claims because there's two wildly divergent claims. The problem with Mr. Brown's affidavit in the first place was that he claims that he told Rocio that there would be immigration consequences, but there's an affidavit that he filed on behalf of Rocio in her divorce case in Nevada, in Las Vegas, Nevada. Is that in the record? We were looking for it and couldn't find that affidavit. It was, it's actually, it was one of the exhibits attached to the writ of error Quorum Novus, and it was filed in the District Court case in Nevada. I want to say that the that the government actually filed it as well, because it amended the record. I'm not sure. And what did the affidavit say? The affidavit said that, to my knowledge, she will have no immigration consequences. The government's not looking to deport her. That was filed in the Judicial District Court in Las Vegas, so that supports her contention that she was told by Mr. Brown that there would be no immigration consequences or somehow that she would be I'm sorry, what was your question? Did he, you just said that he said in that other proceeding that there would be no immigration or consequences. Right, and there were, obviously. It seems to be that I read somewhere in the record that what he said in that other proceeding, and I too had trouble finding it, but from what I read in the briefs, but what he said in the other proceeding was that the government was not seeking to deport her. And the argument raised by the government is that at that time that was correct. Well, it's correct, but you could see how it could be misleading to to Rocio. If that's what she's hearing from her counsel, that could be construed many ways. His attorneys maybe were a little more I don't know what the correct word to say, but I guess as attorneys, you hear something like that, you think now in time, but you say it to somebody that's a layperson, and perhaps that she sees it in a more broad sense that she's going to have no immigration consequences. But the point is that if there was an evidentiary hearing, this all could have been sussed out, sorted out, and the parties could have been queried and questioned on these issues to determine if there was ineffective assistance of counsel. Assuming there was ineffective assistance of counsel in the sense of failure to perform up to professional standards, how about prejudice? I mean, was there a realistic likelihood that she could have escaped without a felony plea of guilty? Or an adjudication of guilty had she gone to trial? There's always a possibility. I do a lot of... I said realistic possibility. Oh, well, there is, yeah. I mean, I've done a lot of criminal defense work in Las Vegas, and prosecutors are understanding that if certain, if defendants take certain pleas, there will certainly be deportation consequences. There's always a way to work different pleas, pleas that maybe won't have or perhaps wouldn't have such drastic immigration consequences. So yeah, if Mr. Brown had tried it just a little bit harder, maybe he would have achieved a little different result. And if I may, I'll reserve the remainder of my time for rebuttal. Thank you. May it please the Court, Bill Reed for the United States. This Court should affirm the District Court's denial of Ms. Ryan's writ of error, quorum nobis, one, because she failed to provide a valid reason for waiting almost eight years to file the petition after her conviction, and two, because both the District Court and Ms. Ryan's counsel advised her that her conviction for bribing a Nevada DMV employee to provide fraudulent IDs could lead to her deportation. At her guilty plea, Ms. Ryan told the District Court or advised the District Court that she understood under oath that this conviction could affect her deportation rights and that it could also affect her ability to withstand deportation or put off a deportation. This subject came up again 17 months later at her sentencing when the District Court revisited it and asked, is this conviction going to subject Ms. Ryan to deportation? At that time, her counsel said, it most certainly does, Your Honor. And the probation officer immediately chimed in and said, yes, deportation is a likelihood. But at that point, she can't withdraw her plea. She certainly... She could try, but it's not going to happen. It'd been an uphill battle, but she certainly could have set the machinery in motion and sought to have done it. That also doesn't go to whatever colloquy she had or did not have with her attorney. That was a discussion between the Court and Mr. Brown as to the effect of entry of a plea, but that doesn't necessarily address the extent to which Mr. Brown had a similar conversation with his client. Not at that time, but at the time she entered her guilty plea when she's placed under oath. And here, the District Court asked her... I understand. If there are any side promises, any side deals other than what she's representing to the Court at the time, and she also, in her written plea agreement, assured the Court that she signed the plea agreement. There's no side deals. The only promises that have been made to me are what's been represented in this plea agreement. My attorney hadn't made me any promises other than what's been represented here in open court under oath. What do you make of the letter that was immigration consequences at the time? My interpretation of that is similar to Judge Lin's, that that was, A, at the time that the letter, the affidavit was filed, there were no deportation proceedings that had been instituted, and B, this was an act of advocacy, if you will. There were some sort of, I presume, a custody battle at the time, and the attorney filed this very short affidavit saying the government's not seeking to incarcerate Ms. Ryan, and that there's no deportation proceedings going on at the time. That's really had nothing to do with what the representations were under oath to the district court and what Mr. Brown represented in his affidavit. There's really nothing to contradict that other than her... That was in an affidavit as well, right, under oath? Mr. Brown's affidavit... To the family court. Yes, Your Honor. It is accurate. It was accurate at the time. There were no deportation proceedings at the time. This was during the interim between her guilty plea and the sentencing. I think there were approximately 17 months during that time that Ms. Ryan represented under oath that there weren't any side deals or promises. This writ of error, quorum nobis, is a highly unusual remedy. I would submit that eight years after the fact, almost eight years after her conviction to file it, is an indication that she was... The genuineness of her representation that there was something that she understood differently than what she told the district court is sort of an inverse proportion to the amount of time that she took to get this writ of error, this highly unusual before the district court. And the district court did make findings. The district court was in the best position to evaluate this matter. The judge, at various points during the guilty plea proceeding, at one point was not even going to take the guilty plea unless he was assured that Ms. Ryan fully understood the consequences of her guilty plea and understood what was taking place. Do you know offhand? I should know, but I don't. I know the judge whose decision we're now reviewing, was it Judge Jones, also the original judge? Yes, Your Honor, that is correct, it was. Unless there are any other questions about this matter, I'll submit it to the court. All right, thank you, counsel. Thank you, Your Honors. Very briefly, much ado has been made about the plea canvass. It must be understood that at the time, and this point was made to the district court judge at the hearing on the writ of error, Corum Novus, that at the time that sentencing was rendered, Rocio had barely been in this country for a year and really didn't understand Spanish very well. It was asserted in her affidavit that she never spoke to her attorney in her native language and that she always had to speak through an interpreter, and that's just somebody in the office, Mr. Brown's office, that spoke Spanish. So she wasn't entirely clear what was going on at the time, and no interpreter was provided, which to me is very unusual because practicing in the state courts, there are always interpreters available for anybody that's a interpreter's president available to interpret things, and they weren't present at that time, which I thought was an important point. As far as the time between, you know, the government's making a big issue that has never addressed the district court, first of all. The district court focused entirely on the ineffective assistance of counsel claim, but as far as the timing, as I stated, Rocio was, she pled out in 2008. She was convicted in 2010. She's been fighting this case ever since she was released from custody in 2010, whether it be in the immigration courts or otherwise, and she's had various counsels, at least two other counsels aside from me, so she has been actually fighting this case in that time. And finally, the affidavits. It's that essentially that it made it sound like there would be no immigration consequences in the future because the government was going to assist her and essentially assist Rocio in staying in the country. That was the gist of the affidavit. So with that, I'll submit, Your Honor. Thank you very much for allowing me to argue on behalf of Ms. Ryan. All right. Thank you very much, counsel. United States v. Ryan is submitted. We will take a Talbot v. Reliance Standard Life Insurance Company.
judges: Wardlaw, W. Fletcher, Linn